674 So.2d 600 (1995)
Stanley L. FORD and Beverly W. Ford
v.
BYNUM LIVESTOCK AND COMMISSION COMPANY, INC.
2940807.
Court of Civil Appeals of Alabama.
October 27, 1995.
Rehearing Denied December 1, 1995.
Certiorari Denied February 2, 1996.
*601 Steven D. Adcock, Talladega, for Appellants.
James T. Sasser and Rebecca A. Walker of Simmons, Brunson, & Sasser, Gadsden, for Appellee.
Alabama Supreme Court 1950425.
L. CHARLES WRIGHT, Retired Appellate Judge.
Stanley Ford and his wife, Beverly, sued Bynum Livestock and Commission Company, Inc., alleging liability for injuries sustained by Stanley while he was attending a horse auction on Bynum's premises. The trial court entered a summary judgment in favor of Bynum. The Fords appeal. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
In reviewing a summary judgment, an appellate court must construe the evidence in a manner most favorable to the appellant and must resolve all doubts against the appellee. Motes v. Matthews, 497 So.2d 1121 (Ala.1986). Reviewed in that manner, the evidence suggests the following facts:
On May 29, 1993, the Fords attended a horse auction held by Bynum Livestock. The auctions are held in a barn owned by Guy Bynum, a licensed and bonded horse dealer.
The horses to be sold at the auction are tagged with a number at a "tag-in" chute in the back of the barn. The animals are then put into pens. The inside of the auction barn is arranged with a seating area in the stands and a sale ring, which has an iron fence around it. The animals enter the sale ring through a door. An employee positioned in the animal holding area listens to the loudspeaker and drives the animals into the ring as they are needed.
Stanley Ford sold several of his horses at the auction on the date of the injury. He rode the horses that he had for sale through the ring himself. Ford raises and breeds horses. He has dealt with horses for approximately 25 years. In 1988 he suffered a broken back after a horse threw him. Additionally, he has been thrown by horses 7 to 8 times.
Ford was familiar with the auction procedure, having regularly attended the Saturday night auction sales at Bynum. On the date in question, Ford sat in the stands after he finished selling his horses. While he was in the stands, he bid on a horse. He testified, however, that his bid was not seen by the auctioneer. He then decided to enter the ring to make further bids. It is not unusual, nor is it prohibited, for people to enter the sale ring.
While Ford was in the ring, he observed a horse come to the door of the ring. The horse stuck its head through the partially opened door and then began to back up. The auctioneer told Ford to grab the horse by the halter and lead it into the ring. Ford reached for the handle of the door. Simultaneously, the door flew open. Ford's wrist was pinned between the door and the iron fence. His wrist was crushed. The door flew open because two horses were in the chute and were trying to enter the ring at the same time. Ford testified that he had never seen two horses enter the ring at the same time.
*602 Three signs are posted in the barn that state, "Not Responsible for Accidents." These signs were present on the date of the injury. It is also the policy of Bynum to periodically make announcements warning people that they should not enter the sale ring and that they do so at their own risk. The announcement is made at the beginning of the auction and at various other times throughout the auction if the ring becomes too crowded.
In an affidavit "Buck" Whitehead stated that in November 1990, he was present at an auction at Bynum and was standing in the sale ring. He stated that he was standing by the door where the horses enter the ring when the auctioneer called for another horse to enter the ring. Without escort, two horses attempted to enter the ring simultaneously. As the horses tried to maneuver into the ring, they forced the door open with their weight. The door slammed against Whitehead's fingers, pinning his fingers between the door and the fence and causing injury to his fingers.
Ford sued for damages for his injury, claiming that his injury occurred as the proximate result of Bynum's negligence or wantonness, in that Bynum failed to secure the animals properly, failed to inspect the premises properly, failed to provide adequate handlers for the horses, failed to repair or alter the condition of the door which they knew created a danger to the public, and/or failed to maintain the premises in a safe condition, all with knowledge that a dangerous condition existed.
A motion for a summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. McDonald v. Servpro, 581 So.2d 859 (Ala.Civ.App.1991). If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of fact. Grider v. Grider, 555 So.2d 104 (Ala.1989). In order to defeat a properly supported summary judgment motion, the nonmovant must create a genuine issue of material fact by presenting substantial evidence. McDonald. Substantial evidence is "`evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven.' [Ala.Code 1975,] § 12-21-12(d)." Economy Fire & Casualty Co. v. Goar, 551 So.2d 957 (Ala.1989).
There is no question but that Ford possessed the legal classification of an invitee. The duty owed an invitee from a landowner is "to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." Hambright v. First Baptist Church-Eastwood, 638 So.2d 865 (Ala.1994). However, a landowner is not liable to invitees "`for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the [landowner] should anticipate the harm despite such knowledge or obviousness.' Restatement (Second) of Torts § 343A (1965), quoted in Terry v. Life Ins. Co. of Georgia, 551 So.2d 385, 386 (Ala.1989)" Boyd v. Sears Roebuck & Co., 642 So.2d 949 (Ala.1994). "In order for a condition to be `known' to a person, that person `must be aware of the existence of the condition and must appreciate the danger it involves.' Terry, 551 So.2d 385, 386 (Ala. 1989)." Boyd.
The trial court entered a summary judgment without setting forth its reasons. Bynum asserts that summary judgment was proper because it did not owe Ford a duty to warn him of a dangerous condition, because the dangers in entering the sale ring were open and obvious, not hidden or latent. It further asserts that the summary judgment was proper due to Ford's contributory negligence and his assumption of the risk.
Ford asserts that the summary judgment was made in error because, he says, there remained a material issue as to whether he was aware of the existence of the condition and appreciated the danger involved.
*603 We find the dispositive issue to be whether the evidence conclusively showed that Ford knew of, and appreciated, a dangerous condition so as to give rise to the "open and obvious danger" defense.
There is no dispute that Ford appreciated the danger inherent in dealing with horses. His past injuries support that fact. It is also undisputed that he was aware of the danger in entering the sale ring. We find, however, that there remains a material issue of fact as to whether Ford was aware of, and had an appreciation of, the dangerous condition involved in this situation. The fact that the door to the chute was open and a horse was about to enter cannot, in our opinion, support an inference of Ford's appreciation for a risk that two horses were going to enter the ring simultaneously, without escort and without warning to him.
In Breeden v. Hardy Corp., 562 So.2d 159 (Ala.1990), our supreme court held that "[t]he questions of the openness and obviousness of a defect or danger and of the plaintiff's knowledge of such conditions are not properly considered matters of law for summary judgment." Questions of contributory negligence, assumption of the risk, or whether the plaintiff should have been aware of the defect are normally questions for the jury. Terry v. Life Ins. Co. of Georgia, 551 So.2d 385 (Ala.1989); Bogue v. R & M Grocery, 553 So.2d 545 (Ala.1989). We find that there are factual issues in this case to be resolved by a jury. The entry of a summary judgment was, therefore, error.
The judgment of the trial court is reversed and the cause remanded for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J. concurs in the result.
THIGPEN, Judge, concurring in the result.
While I agree that this case must be returned for further proceedings, I write to point out that, on remand, the trial court should also consider what impact, if any, the Equine Activities Liability Protection Act may have upon this case. Ala.Code 1975, § 6-5-337. The trial court expressly denied Bynum's request for immunity, pursuant to that Act, based upon Bynum's failure to post the required warning signs. It may be that, although the Act does not afford liability protection for Bynum under these circumstances, the Act may lend guidance to the trial court in determining matters regarding Ford's risks involved in inspecting or evaluating the horses for sale, or in Bynum's risks in permitting Ford, as a prospective purchaser, to inspect or evaluate horses for sale. Ala.Code 1975, § 6-5-337(b)(3)d. Furthermore, I note that our legislature has identified certain inherent risks involved in equine activities. Ala.Code 1975, § 6-5-337(b)(6).
CRAWLEY, Judge, concurring in the result.
I concur in the result only because I believe the issue for the jury is whether Ford assumed the risk when he entered the horse ring at the auctioneer's request. The defense of assumption of the risk is a form of contributory negligence in which the plaintiff places himself in a dangerous position with appreciation of a known risk. This standard, in theory, is a subjective one, addressed to the particular plaintiff, rather than the reasonable person of ordinary prudence. W. Keeton, Prosser & Keeton on Torts, § 65 (5th Ed.1984). Thus, the question for the jury is whether Ford actually knew the risk that might arise when he entered the sale ring and two horses entered the ring simultaneously. See Attalla Golf & Country Club, Inc. v. Harris, 601 So.2d 965 (Ala.1992) (the important issue is whether the plaintiff "actually knew" the risk, not whether the plaintiff "should have known the risk"). Because I *604 think this is the dispositive issue for the jury, I concur in the result only.